Good morning, your honors. Kent Russell for appellant and petitioner Wesley Young. It's a pleasure to be here. I'd like to reserve one minute for rebuttal, if I can. All right. Please watch your time. The time showing is the remaining time you have. Yes, ma'am. All right. This case involves a 21-year-old black man who grew up in a gang-infested neighborhood where he had relatives and friends in some criminal gangs. He, however, tried to rise up from the ashes. He had no record of gang activity. He had no felony record. He had a steady job. He attended college, even played basketball on his college team. He winds up with the worst sentence that we can impose on anyone short of the death penalty. He winds up with life without parole, plus a life sentence, plus 65 to life. And yet there's no evidence that he ever possessed a weapon. The case is limited to ineffective assistance, isn't it? Yes, it is. That's the only thing we got the COA on. Absolutely. So let me focus you on that. Please. As I understand it, the ineffective assistance is failure to produce an expert witness who would say that it's most likely that Young was not in a gang.  Yeah, that's what I said, or meant to say. There are all kinds of reasons for not producing expert witnesses. One is in the secrecy of client-lawyer communications, the client tells you it's going to come out bad if you get the evidence. So you don't seek the evidence that's going to be harmful to your client. The client could have said, I actually am in a gang. Another reason you don't get an expert is that you consult an expert and you get a telephone report from them before getting a written report, and the telephone report is bad. For example, in this case, telephone report could be, it looks like your client's in a gang. I'm sorry to tell you. So you say, thanks for your helpful advice. I will not be calling you as a witness. Another reason is neglect, just didn't think of getting an expert for a factual question like this. It seemed factual rather than something requiring expertise. And another is it looked like it was too peripheral to pile a whole lot of money into getting some hired expert who would kill the case if the jury didn't like him anyway. We had a deficient performance case about hiring a blood spatter expert where we said any competent lawyer would have hired a blood spatter expert. And we had an opinion that said that would have shown that the defendant was innocent. And the Supreme Court reversed this recently in that case. I'm having a little trouble seeing why under the very deferential standard we have to apply here, the failure to produce an expert on whether Young was a gang member is deficient performance. Yes, and you've gotten to the heart of the case, and I'm glad you asked the question, because I think that there are four very good reasons why this is one of those cases that fits through the eye of the needle in Harrington versus Richter. I'm well aware of the decision. By the way, before I get to those reasons, just one thing to mention about Harrington is that the blood spatter evidence in that case was described as a secondary issue. I mean, there is nothing more critical than the gang issue in this case. It controls absolutely everything. It starts with the target offense being battery. I mean, that's justified by the Court of Appeals on the basis of the gang evidence. Then you have the evidence of under the natural probable consequences theory that it's foreseeable that this will lead to murder. That's all gang evidence. Then you wind up with a special circumstance that can only be applied if he intends to kill, and that comes from gang evidence. Okay, so let's accept the notion that unlike Harrington here, it is central rather than secondary. Yes, sir. Very important point. And then the other thing is, I mean, you come up with good reasons in some cases why you might not select a gang expert, but this is not a case where counsel considered using a gang expert. I know. I don't think counsel was opposed. The court found that. There's no evidence. Wait a minute. I don't recall a finding, and I don't recall any evidence. I don't recall an affidavit from the lawyer or a deposition of the lawyer. Am I overlooking something? Well, there's no evidence whatsoever that counsel considered using any gang expert. Is there any evidence that he didn't? Well, there is a – I mean, when I used experts, I used to follow that procedure of saying, don't send me a written report until I call you and find out how it is. And there would be no evidence that I had talked to an expert. I was avoiding the creation of discoverable evidence. I think lawyers do that all the time to protect their clients. I'm looking at – I don't have the actual – it's at page 35 of the excerpts of the record, which contains the district court's analysis of the case. And the district court says an expert was not retained or consulted at the time of the original trial. That's the point. I mean, it's one thing to contact a few experts, like you said. I think you've been a trial lawyer. And sure, I have been too, and that happens, right? You contact an expert, and he says, hey, this is going to kill you. And you don't call that expert. That didn't happen here. This is a Wiggins case. He never consulted anybody. How did the district court reach that conclusion? Well, I think because there was no evidence that he ever consulted with a gang expert. And there was some briefing – Did anyone depose the lawyer or get a declaration? No, we tried to. We tried to get a hearing in the California state court. We didn't get one. And we would have loved to depose the expert, but, you know – I mean, the lawyer. But you know how these cases go. I mean, I've seen a lot of cases where the AG – I don't in California. I don't know. Oh, okay. Well, I mean, I've seen a lot of cases where the AG gets a declaration from trial counsel. I mean, he's fair game at this point. He doesn't want to participate without a subpoena. No one can force him. Subpoena him. But we can have a hearing. There was no hearing. If we had a hearing, we would have subpoenaed him. We tried to get a hearing in the California Supreme Court, and we couldn't get one. And that's a very important point here. You could do a deposition. How do you do a deposition? There's no depositions in criminal cases. The only way you can bring a guy in is with a hearing, a hearing order, an evidentiary hearing order. We didn't get one. A formal briefing. You're right. Yes. Wait. Is this a criminal case? I thought it was a habeas. Well, it is, certainly, Your Honor. You can notice up a deposition, get a subpoena from the clerk, and make somebody testify in your office. You cannot get in California, you cannot get discovery in a criminal case. But it's not a criminal case. A habeas is, well, a habeas is civil in nature, but it's attacking a criminal judgment. They don't treat it as a civil case in California? No, no, no. Not if it comes from a criminal decision. The only way that you get evidence before the California Supreme Court is if they grant you an evidentiary hearing, which we sought and were unable to get. And one of the problems with this case is that the fact-finding is just atrocious. The Court of Appeals never mentions Mr. I want to make sure I understand this because it's foreign to the procedure I'm accustomed to. The procedure I'm accustomed to is habeas is a civil case, and it works just like a car accident case. There's a witness. You want to know what the witness says? You go to the clerk's office. The clerk gives you a subpoena. You serve it on the witness. Bring the witness over to your office or court reporter's office or wherever you like and question the witness. It's not the way it works in habeas from a criminal case. In habeas from a, of course, you can't call the lawyer as a witness at a trial, right? Well, you can't. It's not a trial. It's a habeas. Yes, right. And so trial's over. And once there's an ineffective assistance claim, the lawyer-client privilege is destroyed by the client. Right. But the only way that you get to subpoena somebody is by establishing what's called a prima facie case. That's what you try and do in the California Supreme Court. You say, Justices, here's my prima facie case. And I believe we did establish a prima facie case. And we have a good enough case where we want you to grant us a hearing so that we can examine this lawyer. But they didn't do it. And so we couldn't do it. You don't have open, it would be great if you did. It would be great if you had discovery. But you don't. The only way that you get to hear from the lawyer is if the court grants a hearing. What we've got here is no hearing and the district judge said that an expert was not retained or consulted. It's worse than that because the Court of Appeals, they've never mentioned Mr. Young. How many times do you see this? Talk about a bizarre case. They never even mention him in the statement of facts. And so when the district judge is reaching for facts, he actually cites to something which is the respondent's brief. It's amazing. He cites to this lodgment number four. It's the respondent's brief. Okay, now let's get to the prejudice. What if an expert had been sought at that time, what would the expert have been able to establish? I thought the client's name was in some gang database. Well, he wasn't. But we couldn't establish that. Excuse me. We couldn't establish that from the record. The expert testified that our client was one of 14 documented gang members in this gang, this C9000 gang. That was false. The reason that we know it's false is that our gang expert gives us now uncontradicted testimony that was never in that database. But because trial counsel didn't call an expert, he was unable to establish that that wasn't true. But did trial counsel question, cross-examine regarding that very point? Yes, ma'am. No, well, he cross-examined and he said, well, he's not on a gang roster. That was what he got. Well, a gang roster could be anything that one of these gang guys, you know, types up or writes up. We're talking about an official Cal Gangs database. That's powerful evidence in front of this jury. I mean, my client had no association with the gang in any other way. He never was in any gang activities. He never committed any crimes with the gang. I mean, the only thing they had was that he was a member in this gang and that came from Cal Gangs database, but that was false. But wasn't the cross-examination pointing out that there was a lack of hard evidence to support that assertion? Only that there was a lack of hard evidence to support this gang roster thing. The lawyer never got into whether he was in Cal Gangs or not. He pretty much assumed, I guess, that he was. And by the way, we go into, to an extensive degree in the brief, 10 different ways in which the expert would have covered matters that were simply not covered on cross. And in fact, we submitted an entire supplemental declaration, both in the state court and in this court, that covered nothing but the areas that counsel wasn't able to establish because he didn't call an expert. It begins with not establishing that he wasn't in the Cal Gangs database, but an expert could have explained how when you grow up in this kind of community, that's why you wind up going to a party where there's people that are gang members. I mean, the jury must have figured, how the heck did this guy wind up at this party? But the expert could have explained that. He could have explained that when they classified him in the jail, he went with the general population. They would never do that with a gang member. And we list all of those things in the appellant's opening brief. We go on, there's 10 of them. And I'm just talking about the things that didn't come out in cross. And so I see my time is winding down here. Your time has expired. You're three minutes over. Okay. Can I just say that there are the two parts to this case. The failure to reasonably determine the facts by doing things like citing the respondent's brief for facts that the court of appeals never found. And the absolute overwhelming importance of the gang evidence and the district court's speculation about trial strategy that simply is not there. All right. Thank you, counsel. Thank you very much. We'll hear from the state. May it please the court. Vincent LaPietro on behalf of respondent. The California Supreme Court reasonably applied Strickland in this case. As the district court noted, this is exactly the type of tactical decision that the U.S. Supreme Court has said should not be viewed in hindsight. Let's set aside the doubly deferential standard review for a moment because I think that gives the petitioner in this case a really, really hard time in light of the Supreme Court guidance. But, you know, these facts are such that more so than any other case that I've seen that I can really recall where the gang expert testimony really could have made a big difference. It's really important. The evidence was extremely thin, and Mr. Young doesn't fit the profile of a typical gang member. And all evidence is to the contrary. So why isn't this case different? What possible tactical reason could there be for counsel not to consult with a gang expert in this case? Well, as we noted, there are many possible tactical reasons. First of all, I think it's important to note that gang membership is itself a collateral issue. Gang membership was not the language of the statute. It's collateral in a lot of different factual circumstances. I don't think it's fair to say it's collateral in this case. It's really the linchpin of the people's prosecution in this case because the affiliation with the gang is what explains his participation and presence in this crime, the substantive crime that he was convicted of. And so there are all kinds of innocent explanations that never got brought to light because of the lack of an expert on the defense side. So tell me why that isn't so. Because he's focusing on gang membership and whether or not the petitioner was a gang member. As I said, active participation. In this case, the petitioner admitted to the police in his interrogation that he knowingly accompanied the group of gang members. And there's no question that the other members were gang members. That seems like it cuts against you rather than for you. I mean, if he's not a gang member, then all he is is a guy, a kid who knows the wrong people and goes to a party that turns nasty. Gang membership is what makes him a very serious criminal. As I recall, he was not a shooter.  That is correct, Your Honor. So he's there, and whether he's there without doing something wrong or doing something very wrong depends on whether he's a gang member. No, Your Honor. The gang membership is not an issue. Active participation. As I said, he admitted to the police that he knowingly accompanied a group of gang members. Well, okay. There was a group of people congregated at a gas station, right, where they were talking about maybe taking some retaliatory action at this party. Or a perceived gang slight from a week ago. Were all individuals who congregated at the gas station gang members? Because there were random people there as well. Is that fair to say? Well, I cannot answer that off the top of my head. I believe there were a mixed group of male and females. I believe the large majority of the males were all gang members or affiliates. Counsel, you wouldn't disagree that the gang enhancement largely drove the sentence. You wouldn't disagree with that, would you? Well, that is the special circumstance for the first-degree murder, which drove it from 25 to life to life without the possibility of parole. The language in that is active participation. And again, at that group... Is that collateral then, still collateral in your view, if it raised the sentence so dramatically? Well, the enhancement is not collateral. The active participation is not collateral. What I'm trying to say is that the definition of membership is collateral. Because if they had decided to engage in a debate about who or who was not a member, that wasn't really the issue here. The issue is he knew these gang members were going to commit a mission for gang purposes. He knew and admitted that someone was armed with a gun. And members at the party say he actively participated in the instigation. You can't make him a gang member then. The gang membership doesn't matter. It matters to the sentence. No. Active participation. The jury was instructed, was he an active participant in this activity? How do you prove active participation? Didn't the people prove that by calling an expert to testify that he was a documented member of the C9000 gang? Isn't that how you prove that he actively engaged in gang activities? Well, that was evidence in that vein, yes, Your Honor. So why have that evidence if it's not important? Well, there's no reason to not present all of the evidence available. And in this case, that was provative evidence. If it's collateral, I mean, I don't understand your argument then. On the one hand, you say it's collateral. On the other hand, you say it's very important to present that evidence. No, if the gang expert had gotten up, if a defense expert had gotten up and said, well, I don't think he is a member, I don't think he's a dues-paying member, or whatever membership means, which is a common discussion in California court. If a gang expert had gotten up and said he is not on the rolls, that's a mistake, that testimony is erroneous. What if a gang expert had said that for the defense? Then the prosecution could have offered rebuttal and could have explained that his mere act of accompanying known gang members whom he knew were armed to conduct a retaliatory beating for a gang purpose is itself active participation. That's certainly true, but it would be a whole lot less persuasive. The jury is not likely to have a lot of use for gang members, and it's likely to be more receptive to a defense argument where it looks like the defendant is not a gang member, but what he did was helpful to them. I'm so interested in whether the defendant is a gang member, and more specifically whether there was deficient performance in not getting an expert. Is your understanding of California procedure the same as defense counsel's, that as a practical matter this would be treated like a criminal case so he could not simply notice up the deposition of the defense lawyer and ask him whether he had consulted an expert, whether he had thought of it, if he had chosen not to, why he had not, if he had but decided not to use one, why? Those are the obvious things to do, and it doesn't look like there's any foundation for the district court to have said that they weren't in the absence of evidence one way or the other. Is it true that the evidence would have been that hard to obtain? I cannot speak to depositions. I have never seen one. I can tell you I've never seen one. No kidding, even though you do habeas law? I've never seen a deposition. You do habeas regularly? Yes, Your Honor. And you've never seen a deposition? No, Your Honor. That suggests that defense counsel's, or he's not defense counsel, he's petitioner's counsel, is probably correct. If you've never seen one, they can't be done. Well, I can tell you what I have seen is defense appellate or habeas counsel offering a declaration that says here are my attempts to discuss this with trial counsel. Trial counsel has refused to discuss this with me. I would like an opportunity to compel that. This must be a system unique to California. It may be. I cannot answer that question. I agree with you that it's unusual that habeas counsel doesn't have a declaration from defense counsel. We often see that where there's a declaration. You get that in death penalty. They fall on their swords. Yes, Your Honor. Has the state confirmed whether or not Mr. Young is, in fact, in the California gang database? We have not run our own check to confirm that, but the testimony was that the gang detective did look. He was in there. I would note that the expert declaration here does not refute that. He says, based on my training and experience, I think it would be unusual that he was in there. He does not say that we ran it and he is not in there. I would also note that the prosecution's gang expert correctly said it takes two indicia of membership in order to be in cow gangs. He noted that the police had made contact with the petitioner before in the presence of gang members, and if he was wearing any sort of gang-affiliated clothing, that would be the two indicia required to put someone in cow gangs. So the evidence itself is certainly sufficient to support his statement, the prosecutor witness statement that he was in cow gangs, and that has not been refuted in any way whatsoever. There was no allegations that the prosecution presented false evidence. This is an ineffective assistance of counsel claim. It's like you meet him in the company of some people, you're a cop, and you meet him in the company of some people you know are crips, and you notice he has a blue handkerchief? It could be a football jersey, I think, or a basketball jersey. It could be, yes, a jersey, gang-affiliated clothing. All of that should be noted. That's pretty innocuous. And all of that comes out on cross-examination. What is the basis for your opinion? Well, he was wearing these clothes, and the jury definitely knew all of that. But in conclusion, it was reasonable for the state court to conclude that these declarations did not establish deficient performance and prejudice. The district court properly denied relief, and this court should affirm. Thank you, counsel. Thank you, Your Honor. We'll give you a minute for rebuttal. Thank you very much, Your Honor. Our gang expert definitely says he's not in the cow gangs database, that he checked the database, and he's not there. And that's unrefuted by any expert that they supposedly could have gotten. If he had been able to testify, he would have said, the defense expert would have said he's not in the database. Right. The prosecution would have said he is in the database. So where's the prejudice in that? Well, because there's no documentation, you see. They would not have been able to come up with the documentation that he was. And trial counsel was unable to do much more than that, is to challenge it. Your expert ran a cow gangs check, and his name was not in there. That's correct. Where is that in the record? It's in our expert's declaration. I don't have it in front of me. You'll see it there. It's in there. Am I right that we're stuck with not considering your expert's declaration because it was not before the district court? I don't mean that. Not before the state court? Oh, everything was before the state court, Your Honor. Both declarations. Your expert's declaration. Completely everything. There's no difference in the evidence. We can consider it. Oh, absolutely. It was in what, the habeas filed? It was in the habeas that we filed in the California Supreme Court. Absolutely. And there was informal briefing in which this stuff was discussed, but then there's no findings. They order informal briefing, and then nothing happens. So that's not as if the state court made any findings. So, yes, it's there, and it's properly before you. Was there trial testimony from the state's expert, the gang detective, as to what the two indicia of gang affiliation was that would have caused them to be put on the CalGangs database? He was pretty vague about that, but the clothing thing was one, but it's just a North Carolina jersey, you know, the blue and white colors, that's all it is. That was his gang clothing was a football jersey. And the other thing was that he was in some sort of a, there was a card on him, but it wasn't a gang activity. There was a New Year's Eve party at which there were all kinds of people present, and there was no gang activity, and that was it. There happened to be some gang members present. And, by the way, I forget, I think it was Judge Rawlinson who asked if there were other people, maybe it was you, that were present at this gas station. There were people all over the place. There were girlfriends. That was Judge Wein. I'm sorry? That was Judge Wein. I asked that. I'm sorry, yes. I'm trying to figure out if without the gang detective's testimony, then he would be like the other party attendees, kind of a bystander, somebody who showed up at the party versus somebody who came to get retaliation. Exactly. And this isn't a case where you've got all kinds of gang activity other than this membership. There's no gang activity by Mr. Young except what the gang expert testified to. And then, finally, if you look at all of these tactical reasons that the district court speculates, and they're purely speculation because there's no evidence of it, all of those are consistent with the cross-examination. In other words, it's not like the gang expert would have come in and undercut anything Counsel did. Everything he did, and there were some decent things he did. I'm not saying he was a complete zero, but everything he brought out in cross-examination could have only been enhanced by the gang. Counsel, may I ask you, are you talking about Mr. Williams as the expert? Yes, that's correct. Rodney Williams. Which paragraph was it in his declaration that said he was not, that he ran the gang database and he didn't find Mr. Young? I'm sorry, Your Honor, I can't get that for you right. Yeah, because I looked at that and I don't recall where there was a definitive statement that he ran the database and Mr. Young's name didn't come up. I would submit that it is in there. There are two declarations there. You have to come to the mic if you want this recorded. Yes, there are two declarations there, Your Honor, and he does say that he's, he firmly says that he's definitely. Maybe I'm looking at the wrong one. Is it in the first one or the second one? I thought it was in the second one, Your Honor. So it's SER, do you have a specific SER page number that we can go to? We need it because it's hard to read. Your Honor, I'm sorry, I just can't put my finger on it. That's a very important point. It would seem to me that you would have had that at your fingertips when you came here. I'm sorry, I don't have it at my fingertips. So maybe you can, before you leave the courtroom, you can give it to the clerk and she can get it for you. I will do that, Your Honor, definitely. Thank you. Thank you. Thank you to both counsel. The case just argued is submitted for decision.
judges: Kleinfeld, Rawlinson, Nguyen